# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **02 C 1777** | **DATE** | March 25, 2004 |
| **CASE TITLE** | Cello Pettiford     v     **Michael Sheahan**, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Hearing

(5) ☑ Status hearing set for 5/13/04, at 9:00 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]     Memorandum opinion and order entered.
Defendants' motions to dismiss are granted in part and denied in part. Plaintiff is directed to file an amended complaint by 4/19/04. Defendants' answers are due by 5/10/04.

(11) ☑ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | **Document Number** |
| X | Notices mailed by judge's staff. | | 3/26/04 | | |
| | Notified counsel by telephone. | | date docketed | | 116 |
| | Docketing to mail notices. | | GY | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| GDS | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CELLO PETTIFORD, | ) | |
| | ) | **DOCKETED** |
| Plaintiff, | ) | MAR 2 6 2004 |
| | ) | |
| v. | ) | No.   02 C 1777 |
| | ) | |
| MICHAEL SHEAHAN, Cook County Sheriff; | ) | Judge Robert W. Gettleman |
| COUNTY OF COOK, ILLINOIS; RICHARD | ) | |
| REMUS; JAMES EDWARDS; LEROY MOORE; | ) | |
| TYRONE EVERHART; ABRAHAM | ) | |
| MARTINEZ; HENRY TROKA; ALAN | ) | |
| HAMPTON; OFFICER K. SOLECKI; SAUL | ) | |
| WEINSTEIN; and JOHN DOES 1-45, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In a second amended complaint, plaintiff Cello Pettiford has alleged that he was

physically attacked by guards at the Cook County Jail, causing personal injuries and destruction

of personal property including legal materials, and that employees of the Cook County Sheriff's

Department as well as Cook County and certain individuals at Cook County Hospital covered up

the alleged beating incident, in violation of 42 U.S.C. § 1983 and the Racketeer Influence and

Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962. Specifically, Count I alleges a § 1983

claim against defendants Remus, Hampton, Martinez, Everhart, Solecki, and John Does 1-24 for

use of excessive force. Count II alleges a § 1983 claim against defendants Edwards and Moore

for deliberate indifference to plaintiff's medical needs in violation of the Fourteenth

Amendment.[1] In Count III, plaintiff alleges a § 1983 claim against defendant Troka for denial of

---

[1]During the course of the briefing of the instant motion, plaintiff has dropped all claims against defendant Moore.

access to the courts. Count IV alleges a § 1983 claim against defendants Sheahan, Weinstein, Remus, Edwards, Solecki and John Does 25-34 for the alleged cover-up of the beating by sheriff's employees. Count V alleges a § 1983 claim against defendant Cook County for the alleged cover-up by Cook County employees. Count VI alleges a RICO claim against defendants Remus, Edwards, Solecki, Weinstein and all the John Does. Count VII alleges a RICO conspiracy claim by the same defendants. Count VIII alleges intentional infliction of emotional distress against defendants Remus, Hampton, Martinez, Everhart, Solecki and John Does 1-24. Finally, Count IX alleges an indemnification claim against defendant Cook County pursuant to Carver v. Sheriff of LaSalle County, 324 F.3d 947 (7th Cir. 2003). All of the defendants have challenged the complaint on both procedural and substantive grounds pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, those motions are granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

In his second amended complaint, plaintiff alleges the following facts which, for purposes of the pending motions to dismiss, are accepted as true. In February 1999 plaintiff was a detainee held in Division 9 at Cook County Jail awaiting retrial after an earlier conviction had been set aside by the Illinois Appellate Court. Plaintiff had been continually incarcerated at the jail between April 4, 1995, and May 26, 2000, and then from February 22, 2001, through November 25, 2002. In February 1999, defendants Remus, Everhart, Hampton, Martinez and Solecki were part of a Special Operations Response Team ("SORT) which was responsible for searching Division 9 for weapons, drugs and contraband. On February 24, 1999, a SORT team, led by Remus and including Martinez, Hampton, Everhart and others, went to Division 9 and ordered the assigned tier officers, including defendant Solecki, to unlock the cells and then leave.

2

Three or four SORT officers, led by Martinez, then entered plaintiff's cell and beat him on his head, neck and body as they forced him out. Remus struck plaintiff on the head with a gloved fist. Other detainees were also thrown from their cells, repeatedly hit, and made to stand along the outside wall.

As plaintiff was forced out of his cell, certain officers "trashed his personal belongings," including papers, legal materials, and photographs of his children and other personal effects. SORT guards threw away or destroyed plaintiff's possessions. Other SORT officers, including Hampton, struck plaintiff with fists and a wooden baton on his head, back and neck causing him to urinate on himself. He was forced to recite profanities including the phrase "SORT runs this motherfucker." In the middle of the dayroom plaintiff was ordered to strip naked in front of at least one female K-9 officer. Plaintiff was then threatened by unmuzzled guard dogs while the SORT officers laughed and shouted obscenities. Remus then climbed onto a table and shouted "I get paid whether I come here or not. You can get paid when I leave, cause I don't give a damn about lawsuits. We are going to kick your asses every time we have to come here." The SORT officers then ordered plaintiff back to his cell where he was once again beaten with a baton.

Plaintiff was seriously injured, losing consciousness. His cell mate continually requested medical care for plaintiff but was ignored. Several hours later, after a shift change, plaintiff was found semi-conscious and in tears. Paramedics from Cermak Medical Center, a subdivision of Cook County that provides medical services for detainees, were summoned. They took plaintiff to the Cermak medical facility where he was diagnosed with blunt head trauma and a concussion. He was then taken to Cook County Hospital emergency trauma center and placed under observation. Plaintiff was released the following day with instructions for follow-up medical

3

care. Although jail personnel, including defendant Edwards, were specifically informed of plaintiff's treatment requirements, they refused to comply with the doctor's instructions. Plaintiff received no medical care between February 25, 1999, and March 2, 1999, when plaintiff finally got a message to doctors at the Division 9 dispensary, informing them that plaintiff was to be receiving treatment for severe headaches, dizziness and frequent vomiting. A Division 9 doctor treated plaintiff for post-concussion syndrome and gave him an appointment to be seen nightly and monitored for two weeks. The guards ignored the doctor's orders.

Plaintiff filed an emergency grievance about the February 24 attack and denial of medical care. After receiving no response he and several other, inmates on March 26, 1999, filed a lawsuit in the Circuit Court of Cook County (the "First State Court Action"), naming the County of Cook, Sheahan, Ernest Velasco, Remus, Edwards and various unnamed members of SORT listed as John Doe defendants. That complaint sought damages for the beating and subsequent denial of medical care. Defendants Sheahan and Velasco moved to dismiss pursuant to § 2-619 of the Illinois Code of Civil Procedure based on <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1977), and lack of any alleged personal involvement in the attack. That motion was granted on December 21, 1999, as to each defendant both individually and in their official capacities. On September 18, 2001, the First State Court Action was dismissed as to the remaining defendants for want of prosecution.

On June 6, 1999, plaintiff filed a second state court action, again naming, among others, Sheahan, Velasco, Remus and Edwards. The complaint alleges a series of assaults and denial of medical treatment at the hands of SORT officers starting in 1998 and continuing through the date of the complaint. The complaint makes reference to the February 24, 1999, beating and

4

subsequent denial of medical care, but makes no claim regarding that specific incident. The complaint was dismissed for want of prosecution on February 28, 2000. Plaintiff's appeal of the dismissal was also dismissed for want of prosecution.

On May 30, 2000, plaintiff filed an action in this federal court, No. 00 C 3225 (the "First Federal Action"), again naming Sheahan, Velasco, Troka, and Edwards, again complaining about physical assaults by SORT members while incarcerated at Cook County Jail between 1998 and the date of the complaint. Again, the complaint details the February 24, 1999, beating and lack of medical care, as well as the destruction of plaintiff's legal papers. Again, however, the complaint made no claim with respect to the February 24, 1999, incident. This complaint was dismissed by this court for want of prosecution on December 19, 2000. Plaintiff's motion to vacate the dismissal was also denied.

In July 2001, plaintiff filed a third state court action naming Sheahan in his official capacity, alleging violations during 2001. That case was dismissed on defendant's motion on February 11, 2002. Plaintiff was granted 30 days to move for reconsideration or appeal. He failed to do so.

Finally, plaintiff filed the original complaint in the instant action on February 28, 2002. On April 18, 2002, the court dismissed without prejudice because it appeared that the claims were barred by the two year statute of limitations and by the doctrine of res judicata based on the earlier federal action. Plaintiff moved for reconsideration and in an opinion dated July 2, 2002, the court held that the dismissal of the first federal action barred all "causes of action" that were brought or could have been brought in that case. Plaintiff was granted leave to file an amended complaint but admonished not to add new defendants or new causes of action.

5

Plaintiff filed an amended complaint, and defendants moved to dismiss. Plaintiff, now represented by counsel, agreed that Sheahan was improperly named and sought leave to file a second amended complaint. Defendants objected, arguing that the proposed second amended complaint contained new defendants and new causes of action including the RICO claims, in violation of the court's July 2, 2002, order. Acknowledging that the second amended complaint was broader than anticipated when the court entered its July 2, 2002, order, the court nonetheless in the exercise of its jurisdiction granted plaintiff leave to file, recognizing that plaintiff, who had proceeded pro se through much of the early portions of the litigation, was now represented by counsel.

In addition to the allegations surrounding the February 24, 1999, beating, the second amended complaint also alleges a litany of further beatings and destruction of property committed by SORT members allegedly as retaliation for plaintiff's complaints regarding the February 24, 1999, incident. Defendant Troka was allegedly present at at least one of the subsequent beatings and also allegedly received on August 23, 2001, a notice that plaintiff was to be deposed in the state court action. Troka failed to forward that notice to plaintiff until the evening before the deposition was to take place. Plaintiff attended the deposition but complained to the assistant states attorney about interference with his ability to prosecute his case.

The second amended complaint also alleges that "defendants made a concerted effort to 'cover-up' the February 24, 1999, incident." Edwards and Solecki allegedly altered or made false entries in log books and records to indicate that SORT was not in Division 9 on February 24, 1999, and that no incidents occurred on that date. None of the SORT members, including defendants Remus, Everhart, Hampton and Martinez wrote reports of the incident, an

alleged violation of Cook County Department of Corrections ("CCDOC") requirements. Plaintiff also alleges that defendant Edwards and Moore denied him medical care in order to hide the incident.

Despite defendants' alleged efforts to cover-up, only one week later the John Howard Association wrote to jail personnel requesting an investigation. Two days later, investigator Charles Holman was directed to photograph injuries of another victim, Bert Barrios. On March 15, 1999, Rudolpho Gomez was assigned to investigate the incident. After a month of little progress the investigation was turned over to Holman, but the file contained no photographs of Barrios, and Holman received a letter from Edwards stating that he found only a small bruise on Barrios's wrist.

The second amended complaint alleges generally that Holman's investigation was "hampered by institutional resistance." Nonetheless, Holman interviewed more than 35 alleged victims and reviewed officer's logs, discovering discrepancies between the statements of SORT officers and regular tier officers. Despite the alleged cover-up, the logs show that SORT entered Division 9 with dogs on February 24, 1999, and that detainees had later requested medical attention.

Holman completed his preliminary report on June 20, 1999, and it was promptly forwarded to the Sheriff's inspector general's office with a notation that further inquiries should be made. It lay dormant in the inspector general's office for almost two years. Then in May 2001, Holman was ordered to take a copy to the Sheriff's inspector general, who within a few days ordered Holman to reopen his investigation. Holman then interviewed over 20 CCDOC employee witnesses, about 50 CCDOC employees accused of participating in the beating and

eight to ten additional detainees. Holman also attempted to interview the Cermak paramedics responsible for treating the beaten inmates, but those paramedics refused and neither their supervisors, including the Cermak medical director and the Cook County inspector general, would require them to cooperate.

Holman's supervisor was defendant Weinstein, then chief of Internal Affairs Division ("IAD"). Plaintiff alleges that Weinstein worked to undermine and delay Holman's report by pressuring Holman to provide interviewees with questions ahead of time, and then urged Holman to downgrade the report's proposed charges. Holman's report recommended charges against ten CCDOC employees and eight Cook County/Cermak employees. The report alleged 29 violations against Remus alone, concluding that he entered Division 9 "with the intention of administering corporal punishment" and failed to "enforce humane treatment . . . by directing his SORT supervisors and SORT team members to administer corporal punishment to detainees." The report further found that Remus himself had administered corporal punishment to detainees, including plaintiff. Nine other employees, including defendants Edwards, Troka and Everhart, were cited for filing false reports and bringing in the dogs. The report recommended that five officers and Remus be terminated.

The report also found that seven paramedics and a paramedic supervisor impeded the investigation by refusing to be interviewed, failing to initiate a triage and medical report for the detainees treated, and refusing to order medical care for the detainees.

Under sheriff's office procedures, the inspector general was required to approve the report before jail administrators could consider acting on it. The inspector general delayed approving it until a *Chicago Tribune* article brought the incident public. Only then did the

inspector general finalize the report, and even then sustaining charges against only five officers and one former employee for violating operating procedures. No employee was terminated, and while the report was pending several who were involved in the incident were promoted. Indeed, one of the officers against whom Holman had recommended charges be brought was promoted to acting director of IAD, becoming Holman's supervisor. He was removed from that position after the *Chicago Tribune* article.

## DISCUSSION

### I. Count I

In Count I, plaintiff alleges a § 1983 claim for excessive use of force against Remus, Hampton, Martinez, Everhart, and Solecki, the officers allegedly involved in or witnessing the February 24, 1999, beating. These defendants attack Count I on a variety of procedural grounds.

First, Everhart and Martinez argue that their addition to the second amended complaint violates the court's directive to plaintiff in its July 2, 2002, order not to add new defendants or causes of action. This argument was considered and rejected by the court when it allowed plaintiff to file the second amended complaint, and it is rejected again.

Next, Hampton, Martinez, Everhart and Solecki argue that Count I is barred as to them by the applicable statute of limitations. Illinois' two year statute of limitations for personal injury claims, 735 ILCS 5/13-202, governs § 1983 claims arising in Illinois. Henderson v. Bolanda, 253 F.3d 928, 931 (7th Cir. 2001). The incident occurred on February 24, 1999, and, because plaintiff knew he had been subjected to excessive force, the limitations period began to run at

that time. The instant suit was filed on February 28, 2002, over three years from the date of the incident. Count I is thus time-barred, absent a tolling of the limitations period.[2]

Plaintiff responds by arguing that the limitations period expired on September 18, 2002, which is one year from the date that the First State Court Action was dismissed for want of prosecution. In Illinois, dismissal for want of prosecution is deemed non-final because § 13-217 of the Code of Civil Procedure provides the plaintiff with the right to refile the cause of action within one year of the date of the dismissal order, regardless of the fact that the statute of limitations might have run during that time. Mercantile Holdings, Inc. v. Feldman, 258 Ill. App.3d 748, 751 (1st Dist. 1994). Section 13-217 "revives" a plaintiff's previous, timely-filed complaint beyond the limitations period where no adjudication on the merits has been issued and the complaint has been dismissed for procedural reasons. Id.

Hampton, Everhart, Martinez, and Solecki were not named in the First State Court Action, however, and plaintiff has provided no support suggesting that a case that was never pending against a defendant can some how be "revived." Instead, plaintiff argues that Everhart and Martinez were named as John Does in the state court action and then named in the first amended complaint in the instant action. This argument fails for a variety of reasons. First, § 13-217 protects only the diligent litigant. A failure to make diligent efforts to identify and serve

---

[2]In its July 2, 2002, memorandum opinion the court noted that the statute is tolled pending exhaustion of administrative remedies as required by 42 U.S.C. § 1997e(a). Johnson v. Rivera, 272 F.3d 519 (7th Cir. 2001). Plaintiff filed an emergency grievance three days after the incident. Getting no response, he was entitled to file suit because administrative remedies were unavailable. See Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002). Because plaintiff filed suit in state court on March 24, 1999, the most the limitations period was tolled was for one month. Plaintiff has made no argument that the limitations period was tolled by any filed grievance.

a named defendant in the first action is a violation of Illinois Supreme Court Rule 103(b) and will prevent refiling. See Hinckle v. Henderson, 85 F.3d 298, 305 (7th Cir. 1996). Plaintiff's state court case was pending for over two years with no effort made to discover and serve the John Doe defendants. Moreover, under either Illinois or federal law the addition of Everhart and Martinez in the amended complaint in the instant case cannot relate back to the date of the First State Court Action or even the original complaint in the instant case, because the failure to name them was due to a lack of knowledge of their identities, not due to a mistake as to their names. Fed. R. Civ. P. 15(c); Worthington v. Wilson, 9 F.3d 1253, 1255-56 (7th Cir. 1993); Eison v. McCoy, 146 F.3d 468, 470-71 (7th Cir. 1998); Campos v. Campos, 342 Ill. App.3d 1053, 1067-68 (1st Dist. 2003). Accordingly, the court concludes that Count I is time-barred as to Hampton, Solecki, Martinez and Everhart.

Because Remus was named in the First State Court Action and the instant original complaint, Count I is timely as to him. Therefore, Remus challenges Count I on res judicata grounds, arguing that the final judgment in the First Federal Action bars Count I. That suit, No. 00 C 3225, filed on May 26, 2000, was dismissed for want of prosecution on December 19, 2000. In federal court, unlike Illinois, a dismissal for want of prosecution is a dismissal with prejudice, unless otherwise stated. LeBeau v. Taco Bell, Inc., 892 F.2d 605, 607 (7th Cir. 1989). Because the dismissal of the First Federal Action was a final judgment, res judicata prevents plaintiff from bringing a new suit against any defendant named in the prior suit on any cause of action arising from a single core of operative facts which give rise to a remedy. Roboserve, Inc. v. Kato Kagaku Co., Ltd., 121 F.3d 1027, 1034 (7th Cir. 1997).

11

Remus cannot establish either element. First, and foremost, he was not named in the First Federal Action, thus eliminating any chance for the application of res judicata. Moreover, even if he had been named, the second element is also lacking. As noted above, although the February 24, 1999, beating was mentioned in the First Federal Action, the causes of action asserted arose from separate incidents occurring in January 1999 relating to plaintiff's placement in segregation, a January 27, 1999, beating, a February 10, 2000, destruction of legal materials, and interference with mail and denial of a right to bond after his conviction was reversed, reprisals for his grievances starting in June 1999 and, finally a claim that he was prevented from attending religious services. None of these causes of action arose from the February 24, 1999, beating. Thus, Count I is not barred by res judicata, and Remus' motion with respect to Count I is denied. Accordingly, Count I is dismissed as to all defendants except Remus.

II. Count II

Count II is a § 1983 claim against defendant Edwards for deliberate indifference to plaintiff's medical needs by failing to ensure that plaintiff received prompt and adequate medical care after the February 24, 1999, beating. Edwards raises two challenges to Count II. First, he argues that the count is barred by res judicata, based on the First Federal Action. As noted above, the causes of action asserted in that case arose from different operative facts than the claims made in the instant lawsuit, and thus does not bar the claims alleged in Count II.

Next, Edwards argues that Count II fails to state a claim against him for deliberate indifference because the complaint fails to allege that Edwards was aware that plaintiff had a serious medical condition that required treatment. See LaMarca v. Turner, 995 F.2d 1526, (11th Cir. 1993). Edwards is simply wrong. Plaintiff specifically alleges that after finally getting

12

treatment from Cook County Hospital he was released with specific instructions for follow-up care, that Edwards was specifically informed of those doctor's instructions but failed to comply with the guidelines issued by the hospital. This allegation is sufficient to state a claim for deliberate indifference. Reading the complaint as a whole, plaintiff has alleged a serious medical condition requiring treatment, defendant Edwards' knowledge of that condition, and his deliberate refusal to comply with the doctor's orders. Count II states a claim, and Edwards' motion to dismiss is denied. See Reed v. McBride, 178 F.3d 849 (7th Cir. 1999).

III. Count III

Count III is brought against Troka, pursuant to § 1983, for denial of access to the courts and by the delay on forwarding the deposition notice to plaintiff and repeatedly denying plaintiff's "court ordered" access to the jail law library. Troka raises a number of challenges to Count III, none of which is persuasive.

First, Troka argues that Count III is time-barred and the Illinois Saving Statue is unavailable because he was not named in the First State Court Action. This argument fails because the events about which plaintiff complains in Count III began at the earliest on February 22, 2001, when plaintiff was detained at Cook County Jail after his release on May 26, 2000, but more specifically on August 23, 2001, when Troka failed to forward the notice of deposition. The second amended complaint was filed on July 3, 2003, within the two year limitations period.

Next, Troka argues that the First Federal Action bars Count III on res judicata grounds. Although the First Federal Action does contain some allegations about denial of access to the court, that suit was filed in May 2000, meaning the events that give rise to Count III had not yet

occurred. Obviously, Count III does not arise from the single core of operative facts that were alleged in the previous case.

Finally, Troka argues that Count II fails to state a claim because plaintiff does not have a constitutional right to access to law libraries, and plaintiff has failed to allege a cognizable injury. The Constitution does guarantee the right to challenge conditions of confinement. Lewis v. Casey, 518 U.S. 343, 356 (1996). In Bounds v. Smith, 430 U.S. 817, 821 (1977), the Supreme Court reiterated the already established right to access to the courts. The right is not access to a library, but to be free from active interference with an inmate's attempts to prepare legal documents. Lewis, 518 U.S. at 350. This is precisely what plaintiff alleges Troka was doing, by failing to forward notices and preventing plaintiff from access to the library to prepare his documents. He alleges that he has suffered needless delay and frustration in preventing claims for a violation of a basic constitutional right to be free from excessive force. These allegations, while general in nature, satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a). He has alleged that Troka deprived him of the tools needed to attack the conditions of his confinement. He need not do more at the pleading stage. See Lewis, 518 U.S. at 355. Accordingly, Troka's motion to dismiss Count III is denied.

IV. Count IV

Count IV is titled "Section 1983 claim against defendants Sheahan, Weinstein, Remus, Edwards, Solecki, and John Does 25-34 for cover-up by sheriff's office employees." It alleges generally that the actions of these defendants and covering up the use of excessive force by Remus, Everhart, Hampton and Martinez was pursuant to an official policy of the sheriff's office and violated plaintiff's Fourteenth Amendment rights. Remus, Edwards and Solecki argue that

Count IV (1) is time-barred because the claim was not raised in the First State Court Action, (2) fails to state a claim as to them because it fails to plead any actions taken by these defendants that demonstrate their personal participation in the alleged cover-up, and (3) fails to plead any additional injury sufficient to render the "cover-up" a distinct and separate cause of action from the beating itself. Finally, these defendants argue that to the extent that Count IV is intended to allege a Monell claim only, it fails to state a claim as to them because none of them is a final policymaker. Sheahan argues that the count is barred as to him, based on his dismissal from the First State Court Action. Weinstein argues that because he is sued in his official capacity only, the res judicata bar as to Sheahan also bars the claim against him. To the extent that the count seeks to assert individual liability against Weinstein, he argues that the complaint fails to allege any personal involvement by him in the cover-up, and no causal connection between the cover-up and any injury.

It is difficult to discern what exactly is alleged in Count IV. Certainly to the extent that the count may be viewed as alleging that the February 24, 1999, beating was the result of a policy of cover-up through the sheriff's office, (i.e., that the SORT members had no fear of beating plaintiff because they knew their actions would be hidden), that claim is barred by res judicata. Sheahan was sued individually and in his official capacity in the First State Court Action, alleging a failure to supervise and train his employees. He moved to dismiss arguing that plaintiff had failed to plead a policy or practice as required by Monell, and that the complaint failed to plead any personal involvement. The motion to dismiss was granted on December 21, 1999, on both grounds, and that served as a final order on the merits. Illinois Supreme Court Rule 273; Rein v. David A. Noyes & Co., 172 Ill.2d 325 (1996). Because there was a judgment

15

on the merits by a court of competent jurisdiction, identity of cause of action, and identity of parties, any claim that the February 24, 1999, beating was the result of an official policy or custom or practice is barred.

In his brief, however, plaintiff does not argue that Count IV alleges that the beating itself was a result of a policy of cover-up, but rather that the existing policy resulted in a cover-up of the beating, which resulted in a separate constitutional injury. That injury, according to plaintiff, was a denial of access to the court as set forth in <u>Bounds</u>, 430 U.S. at 818. <u>See</u> <u>Bell v. City of Milwaukee</u>, 746 F.2d 1205, 1261 (7th Cir. 1981) (municipal employee has a constitutional duty not to hide evidence of another employee's crime, and doing so can prevent meaningful access to the court). According to plaintiff, the cover-up of the February 24, 1999, beating unnecessarily delayed litigation over the beating and the psychological damage caused by it. This "claim" arises out of a different set of facts than the claims asserted in the First State Court Action and the First Federal Action[3] and thus is not barred by res judicata. Accordingly, Sheahan's and Weinstein's motions to dismiss on res judicata grounds are denied.

Defendants Remus, Edwards and Solecki argue that Count IV is barred by the two year statute of limitations. In response, plaintiff argues that Count IV is timely because he "was not aware of the full extent of defendants' cover-up activities until late 2002" when Holman's final report was completed. Plaintiff is apparently seeking to avail himself of Illinois' discovery rule, which tolls the running of a statute of limitations period until a plaintiff knows or should have known that an injury has been wrongly caused. <u>Dancor International Ltd. v. Freidman, Goldberg</u>

---

[3] Plaintiff's claim of a restriction on his access to the court raised in the First Federal Action was based on inadequate mailing procedures and library access, not on any claimed cover-up or falsification of records.

& Mintz, 288 Ill. App.3d 666, 673 (1st Dist. 1997). Under this rule plaintiff bears the burden of proving the date of discovery. Defendants argue that because plaintiff knew he was injured on February 24, 1999, when the beating occurred, the limitations period began then.

Defendants misinterpret plaintiff's claim. The injury asserted is the interference with plaintiff's access to the court. Plaintiff claims that he was not aware of defendants' cover-up activities, at least with sufficient knowledge upon which to base a lawsuit, until Holman's report in 2002, well within the limitation period. There is no evidence to suggest otherwise. Therefore, defendants' motion to dismiss Count IV as time-barred is denied.

Defendants Remus, Edwards and Solecki also argue that Count IV fails to plead any personal involvement by them in the cover-up. Although not long on specific details, the complaint does allege that none of these defendants filled out any reports of the incident in direct violation of Cook County Department of Corrections rules, wrote false reports, made incorrect log book entries, and/or denied medical care so that medical reports would not reflect the injuries. Under the liberal pleading standards of Rule 8(a), see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, (1993) these allegations are sufficient.

Finally, Weinstein argues first that he is sued in his official capacity only and, therefore, the claim is redundant to the official capacity claim against Sheahan. It is true that suing Weinstein in his official capacity is the same as suing Sheahan in his official capacity. The complaint does not indicate whether Weinstein is sued officially, individually, or both. Generally, in such instances the court treats the claim as against the officer in his official capacity. See Kolar v. Sangamon County, 756 F.2d 564 (7th Cir. 1985). Kolar is not a rigid rule,

17

however, and when the complaint contains allegations against an officer for individual actions, the defendant has been sued in his individual capacity. Hill v. Shelander, 924 F.2d 1370, 1373-74 (7th Cir. 1991).

In the instant case, Weinstein is alleged to have pressured Holman to provide interviewees with questions in advance and to change his report, downgrading the proposed charges. These allegations are specific enough to state a claim against Weinstein individually. Accordingly, defendant Weinstein's motion to dismiss is denied.

V. Count V

In Count V, plaintiff sues Cook County and John Doe 34-35 for covering up the excessive use of force, alleging that Cook County had an official policy, practice or custom that provided incentive to county medical personnel to falsify medical records and cover-up excessive use of force by jail guards, and that records were falsified in his case, resulting in denial of access to the courts. This is sufficient to allege a Monell claim against the county. See Leatherman, 507 U.S. at 168. Therefore, Cook County's motion to dismiss Count V is denied.

VII. Counts VI and VII

Counts VI and VII are brought against Remus, Edwards, Solecki, Weinstein, and the John Does alleging violations of RICO § 1962(c) and RICO conspiracy, § 1962(d). The basis of the RICO claims is the alleged cover-up of the February 24, 1999, beating. The charged defendants have moved to dismiss Counts VI and VII on numerous grounds, both procedural and substantive. Because the court concludes that the counts are fatally defective, all defendants' motions to dismiss are granted.

RICO was originally enacted "in an attempt to eradicate organized, long-term criminal activity." Mira v. Nuclear Measurements Corp., 107 F.3d 466, 473 (7th Cir. 1992). Section 1962(c), upon which plaintiff relies, makes it unlawful for any person employed by or associated with any enterprise to conduct the enterprise's affairs to a pattern of racketeering activity or collection of an unlawful debt.

A "pattern of racketeering activity" is defined in 18 U.S.C. § 1961(5) as the commission of at least two of the predicate acts enumerated in 18 U.S.C. § 1961(1) within a ten year period.[4]

Plaintiff alleges two enterprises: (1) the Cook County Sheriff's Office and (2) the Cook County Department of Corrections' Department of External Operations, a subsidiary unit of the Sheriff's Office. Remus, Edwards, Solecki and Weinstein allegedly conduct or participated in the affairs of these enterprises by knowingly implementing and making decisions that effectuated the cover-up of plaintiff's beating. These defendants are alleged to have individually committed cover-up activities such as altering or making incorrect log book entries, failing to write required reports, and denying medical attention in order to deflect attention. These allegations, although not greatly detailed, are sufficient to allege that the defendants participated in the affairs of the alleged enterprises. See United States v. Oreto, 37 F.3d 739, 750-51 (1st Cir. 1994) ("Congress intended to reach all who participated in the conduct of that enterprise, whether they are generals or foot soldiers.").

---

[4]As the Seventh Circuit has noted, two predicate acts alone are insufficient to establish a "pattern" of racketeering activity. A RICO plaintiff must also satisfy the "continuity plus relationship test": the predicate acts must be related to one another and pose a threat of continued criminal activity. See Midwest Grinding Co. Inc. v. Sptiz, 976 F.2d 1016, 1022 (7th Cir. 1992).

Whether such actions amount to a pattern of racketeering activity is another question altogether. To constitute a pattern of racketeering activity, plaintiff must allege that defendants committed at least two of the predicate acts enumerated in 18 U.S.C. § 1961(1). Plaintiff alleges that defendants' conduct amounts to obstruction of justice in violation of 18 U.S.C. § 1503 and obstruction of an official investigation in violation of 18 U.S.C. § 1512. Plaintiff is incorrect.

18 U.S.C. § 1503, entitled "Influencing or injuring officer or jury generally," makes it unlawful to corruptly or by threats of force, to endeavor to influence, intimidate or impede any grand or petit jury, or officer in or of any court of the United States, or to endeavor to influence, obstruct or impede the due administration of justice. To constitute an offense under this statute, defendants' acts must relate to a proceeding in a federal court of the United States. O'Malley v. New York City Transit Authority, 896 F.2d 704, 707 (2nd Cir. 1990). Interference in state judicial or administrative proceedings are not covered. Id. Indeed, even interference with an FBI investigation is not covered. United States v. Scoratow, 137 F. Supp. 620 (W.D. Pa. 1956). Plaintiff's allegations against defendants do not allege any interference with a federal case. At most, plaintiff alleges that defendants interfered with Holman's internal investigation, which is not governed by § 1503. Thus, plaintiff has not alleged a § 1503 obstruction of justice claim and cannot rely on § 1503 to establish the commission of a predicate act.

Next, plaintiff argues that defendants' actions amount to endeavoring to impede or obstruct an official proceeding in violation of 18 U.S.C. § 1512. This claim meets a similar fate. "Official proceeding" for purposes of this section is defined in 18 U.S.C. § 1515 as a proceeding before: (A) a judge or court of the United States, a U.S. Magistrate Judge, a Bankruptcy Judge, a judge of the U.S. Tax Court, a special trial judge of the U.S. Tax Court, a judge of the United

20

States Court of Federal Claims, or a Federal grand jury; (B) a proceeding before Congress; or (C) a proceeding before a Federal Government agency which is authorized by law.

Again, Holman's investigation does not qualify as an official proceeding. Recognizing this, plaintiff attempts to argue a violation of subsection(b)(3), which makes it unlawful to "hinder, delay or prevent a communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings." 18 U.S.C. § 1512(b)(3). According to plaintiff, he need not allege or establish that an official proceeding was pending, only that at least one of the communications that defendants attempted to obstruct might have occurred between a witness and a federal officer. See United States v. Bell, 113 F.3d 1345, 1348-49 (3rd Cir. 1997).

Under this section, "one who transmits misleading information with the intent to hinder, delay or prevent communication of information to a law enforcement officer or judge is accountable under § 1512(b)(3) when the false or misleading information relates to a potential federal crime and that information does reach a federal agent or judge." United States v. Veal, 153 F.3d 1233, 1252 (11th Cir. 1998). In the instant case, there is nothing in the second amended complaint that could be read to allege that any misleading information was transmitted with the intent to delay communication of information to a law enforcement officer or judge relating to a federal crime. Nor is there any allegation that any false information actually reached a federal agent or judge. Thus, while plaintiff may be correct that it is irrelevant whether the person who provides the false information that ultimately becomes relevant to a federal investigation intended that a federal investigator or judge receive the information, it is clearly relevant that an

21

investigator or federal judge actually received the information. Id. In the instant case, the second amended complaint makes no such allegation. Indeed, the second amended complaint makes no reference to any federal investigation or trial, or even identifies a potential federal offense. Thus, plaintiff has not alleged a violation of § 1512 and hence a predicate act under § 1962(c). Accordingly, because plaintiff cannot allege a pattern of racketeering activity, defendants' motion to dismiss Counts VI and VII are granted.

VII. Count VIII

Finally, in Count VIII, plaintiff brings a claim for intentional infliction of emotional distress against Remus, Hampton, Martinez, Everhart, Solecki, and John Does 1-24 based on the February 24, 1999 beating. Again, defendants attack this count on procedural grounds.

The Illinois Local Governmental and Government Tort Immunity Act, 745 ILCS 10/8-101 provides a one year statute of limitations for this claim. Like Count I, because Hampton, Martinez, Everhart, and Solecki were not named in the First State Court Action, the Illinois Saving Statute cannot apply to them. Thus Count VIII is time-barred as to them.

Again, as in Count I Remus was named in the First State Court Action and in the original complaint in the instant case, filed on February 28, 2002, less than six months after the state court case was dismissed. Therefore, application of the Illinois Saving Statute, 735 ILCS 5/13-217, means that Count VIII is timely as to Remus. Accordingly, Hampton, Martinez, Everhart and Solecki's motion to dismiss Count VIII is granted, and Remus's motion is denied.[5]

---

[5]Defendants' brief makes no argument on behalf of Remus. Thus it is not clear that he has moved to dismiss Count VIII. To the extent that he has, the motion is denied.

22

## CONCLUSION

For the reasons set forth above, defendants Sheahan's, Weinstein's, Remus', Hampton's, Martinez', Everhart's, and Solecki's, and Troka's separate motions to dismiss are each granted in part and denied in part. Count I remains pending against Remus and is dismissed as to Hampton, Martinez, Everhart and Solecki. Count II is dismissed at to Moore and remains pending against defendant Edwards. Troka's motion to dismiss Count III is denied. All motions to dismiss Count IV are denied. Cook County's motion to dismiss Count V is denied. All defendants' motions to dismiss Counts VI and VII are granted. Hampton's, Martinez', Everhart's and Solecki's motion to dismiss Count VIII is granted. Count VIII remains pending against Remus only.

Plaintiff is directed to file a third amended complaint conforming to this opinion on or before April 19, 2004. The remaining defendants shall file their answer on or before May 10, 2004. The parties are directed to confer and present a definitive, final discovery plan on May 13, 2004, at 9:00 a.m.

**ENTER:** **March 25, 2004**

**Robert W. Gettleman**
**United States District Judge**

23